942 F.2d 793
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John B. "Tito" PORDON, Plaintiff-Appellant,
v.
FIRST FIDELITY THRIFT AND LOAN ASSOCIATION, Stephen C.
Mollath, Custom Glass, United Venture Capital,
Defendants-Appellees,
George W. Abbott, Trustee-Appellee.
In re EAGLES NEST, INC., a Nevada Corporation, Debtor.
John B. "Tito" PORDON, Barbara Pordon, Mary Sbragia,
Plaintiffs-Appellants,
v.
FIRST FIDELITY THRIFT & LOAN ASSOCIATION, Barry L. Solomon,
Trustee, et al., Defendants-Appellees.
 Nos. 91-15225, 91-15761.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 13, 1991.*
Decided Aug. 28, 1991.
 
 Before JAMES R. BROWNING, FARRIS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 John B. "Tito" Pordon ("Pordon"), his wife, Barbara Pordon, and his mother-in-law, Mary Sbragia (collectively, "appellants"), are the sole shareholders of Eagle's Nest, Inc. ("ENI"), a Nevada corporation whose only asset is the Eagle's Nest Inn ("Inn"), a Lake Tahoe restaurant and 20-room hotel. First Fidelity Thrift & Loan Association ("First Fidelity") is ENI's principal creditor, holding a first deed of trust on the Inn.
 
 
 3
 On April 5, 1984, ENI filed a Chapter 11 petition in bankruptcy. By the spring of 1988 the appellants had decided to restructure the Inn as a timeshare resort, for which they sought financing to, inter alia, pay off ENI's numerous creditors. Upon securing a loan guarantee from First Fidelity, ENI moved the bankruptcy court for authorization to incur debt and obtain credit. On September 20, 1988, the bankruptcy court entered an order granting ENI's motion, authorizing it to borrow $1,350,000 from First Fidelity.[1] Based on ENI's receipt and disbursement of these loan proceeds, the bankruptcy court confirmed ENI's plan on January 13, 1989, and entered its final decree on February 15, 1990.
 
 
 4
 ENI fell behind in its mortgage payments to First Fidelity in June 1989 and First Fidelity formally declared the loan to be in default three months later. Before First Fidelity could proceed with foreclosure, however, ENI's other creditors filed an involuntary Chapter 11 bankruptcy petition against ENI on December 27, 1989. When on April 6, 1990, the bankruptcy court denied First Fidelity's motion to lift the stay and allow it to proceed with foreclosure against the Inn, First Fidelity appealed to the district court.
 
 
 5
 During the pendency of First Fidelity's appeal, the bankruptcy court appointed an examiner to review the Inn's financial viability. The examiner's report, filed with the bankruptcy court on August 20, 1990, concluded that the situation was hopeless and recommended that a trustee be appointed and that the Chapter 11 proceeding be converted to a Chapter 7 liquidation. The bankruptcy court appointed a trustee three days later and, on August 27, 1990, converted the matter to a Chapter 7 liquidation.
 
 
 6
 On September 19, 1990, the Chapter 7 trustee filed a complaint in bankruptcy against the appellants, demanding that they turn over ENI's property (i.e., the Inn) to him and asking the court to enjoin the appellants from interfering with his duties as trustee. The bankruptcy court granted the motion and entered a temporary restraining order ("TRO") against the appellants the following day.
 
 
 7
 The following day Pordon filed a notice of appeal to the district court, challenging not the bankruptcy court's order of September 20, 1990, but instead its order of September 20, 1988, authorizing ENI to borrow $1,350,000 from First Fidelity. On January 8, 1991, the district court dismissed Pordon's appeal as untimely, and Pordon has appealed that ruling to this court.[2]
 
 
 8
 Meanwhile, the appellants filed in the separate district court proceeding (i.e., First Fidelity's appeal of the bankruptcy court's earlier refusal to lift the stay) a total of four requests for TROs: October 4, 1990 (challenging, inter alia, the trustee's right to evict them from the Inn);[3] October 16, 1990 (same); November 13, 1990 (same); and May 13, 1991 (challenging the legality of the foreclosure sale, set for the following day).[4] It was the district court's denial of the last of these requests for a TRO that prompted the appellants' second appeal to this court.[5]
 
 
 9
 Just hours before the scheduled May 14, 1991 foreclosure sale, appellant Sbragia filed an emergency motion in this court, asking that the threatened sale be blocked. The request was temporarily granted and on May 30, 1991, this court ordered that the two appeals be consolidated and placed on an expedited briefing schedule, with foreclosure stayed pending the outcome of these appeals.
 
 ANALYSIS
 
 10
 Appeal number 91-15225 need not detain us. It is clear that the bankruptcy court's order of September 20, 1988, authorizing ENI to obtain credit, conclusively disposed of the parties' substantive rights with respect to that issue, see Burchinal v. Central Washington Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1487 (9th Cir.1987); cf. Allen v. Old Nat'l Bank of Washington (In re Allen), 896 F.2d 416, 419 (9th Cir.1990), and was intended by the bankruptcy court to be the final act in the matter. See Slimick v. Silva (In re Slimick), 928 F.2d 304, 307 (9th Cir.1990). Accordingly, the appellants had ten days from September 20, 1988, in which to appeal the bankruptcy court's order. See Bankruptcy R. 8002(a).
 
 
 11
 The timely filing of a notice of appeal is jurisdictional. In re Slimick, 928 F.2d at 306; Greene v. United States ex rel. U.S. Small Business Admin. (In re Souza), 795 F.2d 855, 857 (9th Cir.1986). Therefore, the appellants' failure to file their notice of appeal until two years had elapsed precluded the district court from exercising jurisdiction over their appeal. See In re Slimick, 928 F.2d at 306. Since the district court lacked jurisdiction to review the bankruptcy court's September 20, 1988 ruling, we lack jurisdiction to review its merits as well.[6] See In re Souza, 795 F.2d at 857; Ramsey v. Ramsey (In re Ramsey), 612 F.2d 1220, 1221-22 (9th Cir.1980). Because we find no merit to the appellants' contrary arguments, appeal number 91-15225 is dismissed for want of jurisdiction.
 
 
 12
 The gravamen of the appellants' argument with respect to appeal number 91-15761 is that the bankruptcy court lost jurisdiction to proceed with the involuntary Chapter 11 reorganization when First Fidelity appealed from the bankruptcy court's April 6, 1990 denial of its Motion To Terminate Stay, Or, In The Alternative, Motion For Adequate Protection. Consequently, all of the bankruptcy court's subsequent rulings (e.g., converting the Chapter 11 reorganization to a Chapter 7 liquidation, terminating the stay, and allowing First Fidelity to proceed with foreclosure) were void ab initio because they were done in the absence of any jurisdiction. This contention lacks merit.
 
 
 13
 A district court has jurisdiction to hear an appeal from a bankruptcy court's entry of a final order. 28 U.S.C. § 158(a). A bankruptcy court's denial of a creditor's request for relief from an automatic stay is a final order subject to appeal. Cf. In re Allen, 896 F.2d at 419. Although a bankruptcy court enjoys a wide degree of latitude to reconsider and vacate its own decisions, a pending appeal ordinarily divests it of jurisdiction. In re Adams Apple, Inc., 829 F.2d at 1489; Bialac v. Harsh Inv. Corp. (In re Bialac), 694 F.2d 625, 627 (9th Cir.1982); In re Combined Metals Reduction Co., 557 F.2d 179, 200-201 (9th Cir.1977).
 
 
 14
 Regardless of whether it is construed as a final or interlocutory order, however, the bankruptcy court's ruling of April 6, 1990, was clearly not final as to all parties or all claims in the underlying involuntary Chapter 11 proceeding, and was treated neither by the bankruptcy court nor by the parties as a final resolution on the merits of that case. First Fidelity's request for a lifting of the stay in the involuntary Chapter 11 proceeding on the ground that ENI was not entitled to successive Chapter 11 treatment was not at all the same thing as the bankruptcy court's sua sponte decision to lift the stay in the Chapter 7 liquidation in order to avoid depletion of the estate's assets. To hold as the appellants urge would effectively emasculate bankruptcy law by permitting any disgruntled debtor or creditor to block all proceedings in a bankruptcy court simply by appealing, or threatening to appeal, any ruling of the bankruptcy court it disliked.
 
 
 15
 The proper course for ENI to have taken was for it to have appealed not only the bankruptcy court's conversion order of August 27, 1990,[7] but also the bankruptcy court's May 7, 1991 order lifting the stay and allowing First Fidelity to proceed with the foreclosure sale. The appellants' May 13, 1991 request for a TRO, even without the defects noted by the district court in its minute entry order of that date, did not constitute such an appeal.
 
 CONCLUSION
 
 16
 We DISMISS appeal number 91-15225 for lack of jurisdiction, and we AFFIRM the district court's denial of a TRO in appeal number 91-15761. Accordingly, that portion of this court's order of May 30, 1991, staying foreclosure pending appeal is VACATED. The appellees' Motion to Strike filed August 2, 1991, is DENIED as moot.
 
 
 
 *
 The panel unanimously finds these cases suitable for submission on the briefs and without oral argument pursuant to Fed.R.App P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 ENI made its first such motion on June 10, 1988, asking that it be allowed to borrow $850,000 from First Fidelity. That motion was granted by order entered on July 8, 1988. When it became apparent that ENI's mechanics lien creditors would not consent to the details of ENI's proposal concerning the application of the proceeds of the intended timeshare sales, however, ENI sought and obtained a second loan guarantee from First Fidelity in a larger amount ($1,350,000) and on different terms. ENI then filed a second motion for authorization to incur debt and obtain credit on August 26, 1988, which the bankruptcy court granted the following month
 
 
 [2]
 Docketed as C.A. No. 91-15225
 
 
 [3]
 By order entered that same day, the bankruptcy court granted the trustee's motion for a permanent injunction against the appellants and directed them to vacate the premises
 
 
 [4]
 On May 7, 1991, the bankruptcy court entered its Order Terminating Stay and allowed First Fidelity to proceed with foreclosure
 
 
 [5]
 Docketed as C.A. No. 91-15761
 
 
 [6]
 Even if we were to apply the date of the Chapter 11 plan's confirmation (January 13, 1989) or the date when the final decree was entered (February 15, 1990), the result would be the same, since both dates precede by considerably more than ten days the appellants' notice of appeal filed on September 20, 1990
 
 
 [7]
 Although ENI filed a notice of appeal from that order, it utterly failed to follow through with its appeal and saw it dismissed by the district court for want of prosecution